# 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

## GLAIZE & AL. V. GLAIZE.

### October 2, 1884.

1. APPELLATE COURT—*Issues of Fact.*—Where court below has upon the evidence determined a question of fact, this court will not overturn its decision except in cases of manifest error or misconduct. *Womack* v. *Tankersley,* 78 Va. 242.

2. ASSIGNMENT—*Scope and Extent—Case at Bar.*—In 1859, R. and wife owed J. $2,000, secured by trust deed on steam mill and land. In 1861, R. and wife sold mill to A. for $1,128.76, and R. and wife, J., and C., the trustee, conveyed it to A., who reconveyed it to C. in trust to secure his bond, payable to Mrs. R., for the price. Later, in 1861, J., being indebted by note to G. in $3,893, by writing assigned to G. certain bonds and $1,145.85 out of the debt of R. and wife to J., making $3,969.11. G. delivered to J. his note and paid the $76.14 excess. In 1879, at J.'s instance, C. advertised the land for sale. G. filed his bill, praying the court to administer the trust and apply proceeds to balance due him. J. answered, denying that any interest under that deed had been assigned to G. The written assignment on its face was ambiguous. The testimony taken was unsatisfactory and contradictory. The court below decided for G. On appeal here—

HELD (*Lacy and Fauntleroy, J.'s, dissenting*):

> The assignment entitled G. to $1,145 out of the entire debt of R. and wife to J., and to that extent to the benefit of all J.'s securities, including the trust deed on the land.

Appeal from decree of circuit court of Frederick county rendered 23d June, 1883, in cause of George Glaize against John Glaize, John G. Rinker and Rebecca E., his wife, and Wm. L. Clark, trustee. The object of this suit was to have the court

below administer a deed of trust executed by Rinker and wife, 30th September, 1859, on real and personal property to Clark, as trustee, to secure a debt of $2,000 due from them to John Glaize. In 1861, part of the personalty was sold to Martin E. Alexander for $1,128.76, who gave for that sum his bond, with one Lewis Castle as surety, payable to Mrs. Rinker, and secured it also by conveying the property to Clark, in trust. In April, 1861, John Glaize, being indebted by note to George Glaize in the sum of $3,893, by writing assigned to him certain bonds and $1,145.85, as of September 16, 1860, out of the debt due to John from Rinker and wife, which exceeded his indebtedness to George by the sum of $76.14. Thereupon George delivered to John his note and paid him the excess. In 1879, by direction of John, the trustee advertised the land for sale under the trust deed of 1859. Thereupon George filed his bill, praying that the trust deed be administered under the auspices of the court, that the balance due him by virtue of the partial assignment of the Rinker and wife debt be ascertained, and that the proceeds of said trust be applied to said balance. John answered and denied that any interest in that deed of trust had been assigned to George, but only so much of that debt as was covered by the bond of Alexander and Castle for $1,128.76. The written assignment was ambiguous on its face. Numerous witnesses were examined by both parties.

The evidence was contradictory and unsatisfactory. But the court below held that out of the proceeds of the sale of the land by Clark, trustee. there was due to George Glaize the sum of $557.20 with interest from 30th September, 1874, and decreed the payment thereof and the costs of the suit to him. From that decree, John Glaize and others appealed. The opinion of the court states the case in detail.

*Dandridge & Pendleton, J. H. Williams,* for the appellant.

*Holmes Conrad,* for the appellees.

LEWIS, P., delivered the opinion of the court:

On the 30th day of September, 1859, John G. Rinker and Rebecca, his wife, conveyed to W. L. Clark, trustee, a certain steam engine and saw mill, together with certain other personalty and a small tract of land, lying in the county of Frederick, to secure the payment to the appellant, John Glaize, of a debt due by Mrs. Rinker, amounting to $2,000. Afterwards, on the 9th day of January, 1861, the Rinkers sold the engine and saw mill to one Martin E. Alexander, and conveyed the same to him by deed of that date, in which John Glaize and Clark, the trustee, united. And by deed of even date Alexander conveyed the engine and mill to Clark, trustee, to secure the payment of the purchase money, evidenced by four bonds executed by himself with one Castle as surety, and payable to Mrs. Rebecca E. Rinker. These bonds amounted in the aggregate to the sum of $1,128.76. On the 17th day of April, 1861, the appellant was indebted to the appellee, George Glaize, in the sum of $3,893, evidenced by note or notes; and on that day, in consideration of the transfer to the latter by the former of certain notes and bonds, and an assignment out of the debt of the Rinkers to the amount of $1,145.84, as of September 16, 1860, the note or notes of the appellant were surrendered by the appellee. Added to the notes and bonds thus transferred, the assignment out of the Rinker debt aggregated the sum of $3,969.11, or $76.14 in excess of the appellant's indebtedness to the appellee, which the latter paid in cash to the appellant. The assignment of April 17, 1861, was in writing, signed by the appellant, and is as follows: "I hereby assign to George Glaize, $1,145.84, as of September 16th, 1860, with interest from that date, out of the debt of John G. Rinker and Rebecca Rinker, his wife, to me, which is secured in their deed of trust to Wm. L. Clark, Jr., trustee, and I hereby authorize him to exercise such control of the said debt and trust as he may find necessary for the purpose of

carrying out this assignment, for which value has been received by me. Witness my hand and seal." (Signed) "John Glaize."

In the year 1879, the real estate conveyed by the trust deed of September 30, 1859, was by the trustee, Clark, advertised for sale by direction of the appellant, John Glaize. Thereupon the appellee, George Glaize, filed his bill in the court below, praying that the trust be administered under the direction of the court, and that the balance due by virtue of the partial assignment of the Rinker debt be ascertained and first paid out of the proceeds of sale. John Glaize answered the bill, insisting that by the assignment of April 17th, 1861, only the Alexander bonds were assigned, which, if not collected, it was because of the plaintiff's delay and carelessness, and that no interest under the trust deed of September 30, 1859, was assigned to the plaintiff. But this defence the circuit court overruled by the decree now complained of.

The question we have to determine is, whether by the assignment of April 17, 1861, George Glaize became the assignee of the Alexander bonds. It is admitted that those bonds were not made payable to John Glaize, the beneficiary in the trust deed of September 30th, 1859, but were payable to Mrs. Rebecca E. Rinker. Nor is it claimed that those bonds were at any time in the possession of John Glaize. It would seem that upon their execution they were delivered to Clark, the trustee, in the deed by Alexander, to secure their payment, and that they remained in his possession until they were delivered by him to Messrs. Barton & Boyd, attorneys, upon the written order of Mrs. Rinker in 1871. George Glaize is very emphatic in his testimony that no assignment of the bonds was made to him, and that he never saw them until after the institution of the present suit. He testifies further, that he declined to take an assignment of them, for reasons stated to John Glaize pending the negotiations between them. We think his version of the case is sustained by the proofs. It would seem strange if the parties had intended

an assignment of these bonds, that they were not produced at
the settlement between them, and then and there formally
assigned and delivered to the appellee, as was done in respect
to the other notes and bonds which were then assigned by the
appellant in discharge of his indebtedness to the appellee. But
no evidence of such assignment appears on the bonds them-
selves, nor is it claimed by the appellant that they were assigned
otherwise than by the written assignment of April 17, 1861.
That assignment, as we have seen, does not in terms refer to
the Alexander bonds, but purports to assign $1,145.84, with
interest, out of the debt of John G. Rinker and Rebecca, his
wife, secured by their deed of trust of September 30, 1859. At
that date the Alexander bonds with interest amounted to more
than the sum assigned by that instrument, and there is no
explanation by the appellant for this discrepancy. And the
debt then due by John G. Rinker and wife was secured on the
real estate of Mrs. Rinker and the personal property conveyed by
their trust deed other than the engine and mill. But the course
and conduct of the appellant himself, after the assignment of
April 17, 1861, goes far towards sustaining the contention of
the appellee. It appears by the evidence that after the close of
the war he interested himself in the collection of the Alexander
bonds through Clark, the trustee, and that at his instance, Clark
several times went to Jefferson county, West Virginia, where
the obligors resided, for the purpose of collecting the bonds.
Clark testifies as follows: "After the close of the war, in July
or August, 1865, I was requested by Captain John Glaize to
endeavor to collect the bonds for the deferred purchase money
from Alexander, referred to in the deed of trust, and I went to
Jefferson county, collected some of the money, brought it back
and paid it to Mr. Glaize. I made two subsequent trips to
Jefferson, collected each time more money on the bonds, and in
each case paid the money to *Mr. John Glaize.* I advised Mr.
John Glaize to authorize me to sell the mill in case Alexander
failed to pay up, which he did authorize me to do."

The same witness further testified that early in the year 1866, the parties in interest met in his office in Winchester and agreed upon terms of settlement with Castle, Alexander's agent and surety. He says that at that meeting John Glaize was certainly present and he thinks George was there also. But this the latter denies. It is quite probable that at that meeting it was agreed by the Rinkers and John Glaize that, in order to save Mrs. Rinker's land the Alexander bonds which, as we have seen, were payable to her, should be collected and the proceeds applied to the discharge of so much of the Rinker debt assigned by John Glaize to George as remained unpaid. But no formal assignment of the bonds was then made and the subsequent collections by the trustee were, as he says, turned over to George Glaize. Subsequently the bonds were, upon the written order of Mrs. Rinker, turned over to Messrs. Barton & Boyd to be collected and applied for George Glaize's benefit. It appears from the evidence that due diligence was used by those attorneys to collect them, but without avail. Under these circumstances the circuit court properly held that the loss did not fall on the appellee.

The testimony is contradictory and not altogether satisfactory. But, upon the whole case, and recognizing the well established rule which requires an affirmance of the action of the lower court, unless manifestly erroneous (*Womack* v. *Tankersley*, 78 Va. 242), we feel constrained to affirm the decree in the present case, with leave, however, to either party, when the case goes back to the circuit court, to have an inquiry, if desired, to ascertain the true balance due the appellee upon the principles settled by the foregoing opinion.

RICHARDSON and HINTON, Js., concurred in the opinion of LEWIS, P.

LACY, J., dissenting, said:

I do not concur at all in the opinion of the majority. My own views are briefly as follows:

On the 17th of April, 1861, the appellant, John Glaize, being indebted to the appellee, George Glaize, was required by George to settle what he owed him, either pay up in full or give other security. John not having the money, and saying he was unwilling to give endorsers, proposed to exchange with George good paper held by him for the paper of his held against him by George. To this George assented, and a settlement was had. John owed George $3,893, and John assigned him $3,969.11 worth of bonds and securities, leaving a balance due John of $76.14 on that settlement, which George paid in cash to John, and delivered up to John all of his own bonds to be cancelled. There is no dispute about any of this assigned paper except the item of $1,145.84, called the Rinker debt, or the Alexander debt, both names being given to it in the statement made at the time. That there may be no ground for further question as to what the assignment was in terms, I will insert it in full as follows:

" I hereby assign to George Glaize $1,145.84, as of September 16th, 1860, with interest from that date, out of the debt of J. G. Rinker and Rebecca Rinker, his wife, to me, which is secured in their deed of trust to Wm. L. Clark, Jr., trustee, and I hereby authorize him to exercise such control of the said debt and trust as he may find necessary for the purpose of carrying out this assignment, for which value has been received by me.

Witness my hand and seal.

Teste: • JOHN GLAIZE."

. W. L. CLARK, JR.

It cannot be denied that the assignment on both sides between these parties was absolute. John received his bonds and cancelled them, and assigned the bonds, &c., assigned by him for value. That the transaction was complete between the parties is evident from the fact that George, in receiving the assigned paper, paid the balance in money to John—$76.14.

There is only one question in this case and that is this: The

debt due by Rinker to John originally was $2,000, but by an arrangement between John and Rinker, before George had any concern with it, the Rinker debt had been divided into two parts, one part due to Rinker by Alexander, and secured upon a saw-mill, and the other due by Rinker to John as before, and secured by a lien on the land. The Alexander debt remaining also due to John as before, Alexander having bought the saw-mill, and given a trust deed on it to Rinker to secure the debt already due to John, and secured by trust deed from Rinker to John.

. The Rinker debt was thus divided into two parts in 1860. In 1861 the assignment was made out of it by John to George. And which part of it was assigned to George? The Alexander bonds, or the other part of it? Not the Alexander part. This is the sole practical question in this case, and there is very little difficulty about it. The original debt of the Rinkers to John was $2,000; the Alexander debt was $1,128.76, which, taken from $2,000, left $871.24.

Now, in determining which of the two parts of this Rinker debt was assigned by John to George, if we turn to the assignment itself, we find that John assigned to George "$1,145.84, as of 16th September, 1860, with interest from that date *out of the debt* of John G. Rinker," &c. There can be no just ground to contend that the part assigned to George, of the Rinker debt, was the $871.24, not due by Alexander, and remaining of the debt after the Alexander bonds are taken out of it. And if the interest is computed on the $1,128.76, from March 26, 1860, its date on the $1,100, and adding the $28.76 due that day, and deducting the legal commission of the trustee, it makes the amount actually assigned, as of that day, within a few cents. And if we look further to the *addendum* to the record, in which is printed the statement used at the date of the assignment between the parties, which is substantially the same filed with the deposition of John, except that the two columns of figures, the one in ink, and the other in pencil, are distinguished the

one from the other. The column in ink is headed with the item, Martin E. Alexander, $1,145 ; and then follow the other bonds, &c., assigned by John, which column is not added up at the bottom of the column. The column in pencil is headed "Rinker, $1,161.11 ;" then follow the other bonds, &c., as in the other column, except the Burgess debt, which is changed in the pencil column from $112.30 to $161.61, and it would seem that the discrepancy in these items, the Martin E. Alexander and the Burgess' debt, in the two columns, was caused by ascertaining, as of April 17th, 1860, the present value by computing the interest then accrued on these two debts since the memorandum in ink was made; the memorandum in ink being made as of the date when the written assignment purports upon its face to take effect, "as of the 16th of September, 1860." By the ink memorandum, in the list of the bonds, &c., to be assigned, this Martin E. Alexander debt is set down as $1,145, no cents being mentioned. In the assignment it is stated as "$1,145.84," which, as has been said, is the precise amount of the Alexander bonds, within a few cents. But as the transfer was to be absolute, and the balance on either side to be paid in money, it was necessary to ascertain the value as of the date of the assignment, April 17th, 1861, to ascertain the exact value as of that date of the bonds on both sides. So, as seems obvious, the interest was computed, which had accrued on the Alexander bonds from the day the assignment was to be effective, the 16th day of September, 1860, as appears on its face, and the period when the exchange was effected, April 17th, 1861. And if this interest is computed from the one date to the other, on the original amount of these bonds, $1,128.76 (not on the $1,145.84), it will bring it within a few cents, when added, of the $1,161.11, set down at the head of the column of figures in pencil, which is stated as "Rinker, $1,161.11." No argument, I think, can be drawn from the use of that name. Both sections of the original Rinker debt were still due by Rinker, and in the assignment the amount of $1,145.84 is spoken of as a part of the Rinker debt

thus: "Out of the debt of John Rinker," &c.   So that it seems
to be clear, from the face of the papers alone, that the part of
the Rinker debt assigned by John to George, was the part com-
prised in the Alexander bonds.   But the circuit court, by its
decree complained of, decided "that by the written assignment
of April 17th, 1861, John Glaize assigned to George Glaize
$1,145.84, as of September, 1860, with interest from date but of
the debt of John G. Rinker and Rebecca E. Rinker, his wife,
which is secured in the deed of trust to William L. Clark, Jr.,
trustee, and that George Glaize was not the assignor of the
bonds of Martin E. Alexander to Rebecca E. Rinker, and that
it does not appear that any loss has accrued upon these bonds
by reason of the default or *laches* of George Glaize," &c.

While this decree seems to me to be clearly erroneous, from
the face of the papers cited above, that conclusion becomes still
more apparent from the evidence in the cause.   Mrs. Rinker is
dead, and Alexander has left the country; so their depositions
are not taken.   But George Glaize has testified at great length,
and it is clear from his deposition, and the admissions drawn
from him, that the assignment to him was of the Alexander
bonds, and that he was unwilling to take in exchange for the
paper of John any paper on Mrs. Rinker, as she was his near
relation and he was unwilling to have any necessity imposed
upon him to distress her.   In his deposition on cross-examina-
tion, George says, "They are put down here (that is, in the
statement made at the time of the assignment), as he signed
them over to me.   The Martin-Alexander note, as we called it,
was the last one taken;" then correcting himself (that *should
be* John G. Rinker and wife).

And again he says: "It appears to me there was a little dif-
ference paid by the one or the other of us to make it come out
even.   But it was understood before we closed, that this deed of
trust upon John G. Rinker and wife on *the saw-mill*, as they
claimed, was to be paid to me without any trouble or costs."
And again, "Glaize and Rinker *got me to take it out of the*

*hands of Captain Clark and place it* in the hands of Barton &
Boyd." And again; "I did take it out of the hands of Cap-
tain Clark." And again; "I would not take (the trust-deed),
except with his obligation that I should not sell this property of
John G. Rinker and wife."

But independent of George's deposition, the record shows
that Barton & Boyd were substituted by George, as his counsel
in lieu of William L. Clark; and their receipt is in the cause
for *these identical bonds,* so taken from Captain Clark, in which
they sign themselves as attorneys for George Glaize; and, again,
in a note to Captain Clark, trustee, they say: "Please pro-
ceed to execute the trust from *Martin E. Alexander* to you to
secure four bonds to you, &c.  *  *  *  *  You are authorized
to abate the interest for four years, viz: From April 17th, 1861,
to April 17th, 1865. Barton & Boyd, attorneys for George
Glaize, assignee of John Glaize." If he was not the assignee
of these bonds, he was certainly taking some unusual steps to-
wards what he had no concern with. Yet the circuit court in
its decree declares that he was not the assignee of these bonds.

Captain William L. Clark says, that in 1867 he met George
and Mr. Alexander's manager, Castle, and George said to him
that he did not wish him to take any further action toward col-
lecting the money (the Alexander bonds), or to receive any more
of it himself; that he and Mr. *Castle* would settle it between
them. Captain Clark adds: "I was fully informed by them
that my agency in the matter was desired by them to be dis-
pensed with." Castle was the agent of Alexander, and was
managing the saw-mill. George thus took complete control of
*the bonds,* dismissed the chosen agent both of John and Mrs.
Rinker, and took it in hand along with *Castle,* to arrange all
about it himself, and employed his own lawyers, who regarded
only his own instructions, and who took possession of the bonds
and ignored altogether John and Mrs. Rinker in their manage-
ment. For, Mr. Boyd says in his deposition: "I have no recol-
lection of Captain John Glaize exercising any control over the

claim while it was in our hands. I would *not have allowed Captain Glaize's wishes in the matter to have controlled* me unless they were approved by George Glaize."

Captain Clark also proves that large sums were paid on the bonds which were all admitted by George to have been received by him; $285 at one time, $274.25 at another time, and $190 at still another time. John, in his depositions, says that he assigned the debt of Alexander to George and undertook to exercise no further control over it; that he gave a notice to the trustee, which was required to close the deed, that time was given; that Castle was paying up the debt; the case looked favorable; George took the collection of the debt out of the trustee's hands and said he would attend to it himself after that, and that he never had anything to do with it after that; that he found a man who wanted to buy the saw-mill and told George, but George did not go to see the man; that he had no knowledge of the order by George to abate four years' interest and was not at all consulted about it; that every other debt he assigned to George was collected by him; that on the date of the assignment, April 17, 1861, he notified Captain Clark, the trustee, that he had assigned the Alexander bonds to George and that after the assignment the Alexander bonds were placed in the hands of George and that George placed them in the hands of Captain Clark for collection, and that George took them out of Clark's hands. Now, if these bonds were placed in the hands of George, and assigned for value by John in 1861 and there remained all these years and were entirely controlled by George, a large part of them collected by George, a part released and time given, and the trustee dismissed by George, and the exclusive-management assumed by George, what ground is there to charge John, the assignor, if a part of the debt was lost by the over-confidence of George in his new and promising friend, Castle, who afterwards spirited the saw-mill across the Potomac river into Maryland.

And it further appears that George did not conclude that those

bonds were not transferred to him until the trustee, Clark, was directed by John, in 1879, to sell the Rinker land, and then he brought this suit eighteen years after the date of the assignment. During all which time he had laid no claim to the land debt and had, indeed, declined to be concerned about it or to accept it.

The circuit court, as we have seen, held that the Alexander bonds were not assigned to George and that he had not been guilty of any default or *laches* which had caused their loss. It is difficult to imagine what rule of diligence would be applied to George or how any question of default or *laches* could apply to him if the bonds had not been assigned to him, but some other bond or debt. It is clear to me that the decree of the circuit court is erroneous and should be reversed.

FAUNTLEROY, J., concurred in the opinion of LACY, J.

DECREE AFFIRMED.